UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. DEIRDRE CHIARAMONTE,

Plaintiff,

-v.-

Index No. 13 CIV. 5117 (KPF)

THE ANIMAL MEDICAL CENTER and KATHRYN COYNE,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS UNDER THE EQUAL PAY ACT AND THE NEW YORK LABOR LAW**

BOND, SCHOENECK & KING, PLLC
330 Madison Avenue, 39th Floor
New York, New York 10017
T: (646) 253-2300
F: (646) 253-2301

Of Counsel: Louis P. DiLorenzo, Esq.
Barbara V. Cusumano, Esq.
Allison M. Zullo, Esq.

Attorneys for Defendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 6

I. STANDARD OF REVIEW ..... 6

II. PLAINTIFF'S EPA AND NYLL CLAIMS SHOULD BE DISMISSED BECAUSE SHE HAS FAILED TO ADEQUATELY PLEAD AN EPA OR NYLL CLAIM. ..... 7

III. EVEN IF THE COURT DOES NOT DISMISS PLAINTIFF'S EPA AND NYLL CLAIMS, IT SHOULD LIMIT DISCOVERY TO THE ALLEGED "COMPARATORS" NAMED IN PLAINTIFF'S AMENDED COMPLAINT ..... 19

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page

CASES

*Abdullajeva v. Club Quarters, Inc.*,
1996 U.S. Dist. LEXIS 12805 (S.D.N.Y. Sept. 3, 1996) ....8

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....6

*Bass v. World Wrestling Fed'n Entm't, Inc.*,
129 F. Supp. 2d 491 (E.D.N.Y. 2001)....passim

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....6

*Bernstein v. Mony Group*,
228 F. Supp. 2d 415 (S.D.N.Y. 2002)....10

*Brass v. American Film Technologies, Inc.*,
987 F.2d 142 (2d Cir. 1993) ....7

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ....7

*De La PeÑa v. Metro. Life Ins. Co.*,
12-CV-0766, 2013 U.S. Dist. LEXIS 97769 (E.D.N.Y. July 11, 2013)....10

*EEOC v. Port Auth. of N.Y. & N.J.*,
No. 10 Civ. 7462, 2012 U.S. Dist. LEXIS 69307 (S.D.N.Y. May 16, 2012)....passim

*Frasier v. General Electric Co.*,
930 F.2d 1004 (2d Cir. 1991)....12, 19

*Gibson v. Jacob K. Javits Convention Ctr.*,
No. 95 Civ. 9728, 1998 U.S. Dist. LEXIS 3717 (S.D.N.Y. Mar. 23, 1998)....11, 12, 17

*KBL Corp. v. Arnouts*,
646 F. Supp. 2d 335 (S.D.N.Y. 2009)....20

*Lacey v. Carroll McEntee & McGinley, Inc.*,
No. 93 Civ. 8832, 1994 U.S. Dist. LEXIS 15298, 1994 WL 592158 (S.D.N.Y. Oct. 26, 1994)....12

*Lacey v. Carroll McEntee & McGinley, Inc.*,
*No.* 93 Civ. 88321994 U.S. Dist. LEXIS 15298 (S.D.N.Y. Oct. 19, 1994) ....8

*Moore v. Publicis Groupe SA*,
No. 11 Civ. 1279, 2013 U.S. Dist. LEXIS 120024 (S.D.N.Y. 2013) ..............................20

*Morris v. Fordham Univ.*,
No. 03 Civ. 0556, 2004 U.S. Dist. LEXIS 7310 (S.D.N.Y. Apr. 27, 2004) .....................9

*Noyer v. Viacom Inc.*,
No. 97 Civ. 6989 (JSR), 1998 U.S. Dist. LEXIS 6341 (S.D.N.Y. Apr. 30, 1998) ..........8

*Podany v. Robertson Stephens, Inc.*,
350 F. Supp. 2d 375 (S.D.N.Y. 2004) .....................................................................20

*Rose v. Goldman, Sachs & Co., Inc.*,
163 F. Supp. 2d 238 (S.D.N.Y. 2001) .................................................................8, 19

*Sigmon v. Parker Chapin Flattau & Klimpl*,
901 F. Supp. 667 (S.D.N.Y. 1995) .........................................................................12

*Suzuki v. State Univ. of N.Y. College*,
No. 08-CV-4569, 2013 U.S. Dist. LEXIS 83555 (E.D.N.Y. Jun. 13, 2013) ........8, 12, 18

*United States v. Int'l Longshoremen's Ass'n*,
518 F. Supp. 2d 422 (E.D.N.Y. 2007) .......................................................................7

**STATUTES**

Equal Pay Act, 29 U.S.C. §206(d) ...........................................................................passim

New York State Labor Law § 194 (the "NYLL") .............................................................passim

**OTHER AUTHORITIES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ..................................................passim

## PRELIMINARY STATEMENT

Defendants The Animal Medical Center ("AMC") and Kathryn Coyne, by their attorneys, Bond, Schoeneck & King, PLLC, respectfully submit this Memorandum of Law in support of Defendants' Motion to Dismiss Plaintiff's Equal Pay Act, 29 U.S.C. §206(d) (the "EPA") and New York State Labor Law § 194 (the "NYLL") claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The basis for Defendants' motion is that Plaintiff Deirdre Chiaramonte ("Plaintiff") did not satisfy the pleading requirements under the EPA and the NYLL, because she has not definitively named comparators at all, much less any former coworkers who satisfy the requirement that plaintiffs filing EPA and NYLL claims must name comparators who performed "substantially similar" work. Moreover, the information upon which Plaintiff did rely in bringing her Amended Complaint has been utterly misrepresented and, as explained more fully below, actually demonstrates that her job was entirely different from any other AMC employee named in the Amended Complaint.

As expressed during the pre-motion conference, and as Judge Failla acknowledged, the true heart of Plaintiff's dispute lies in her allegations of defamation and tortious interference, which are purely state law claims, and Plaintiff clearly pursued the EPA claims as an afterthought solely to assert federal jurisdiction. Plaintiff should not be permitted to circumvent the pleading rules and pursue EPA claims without first having a reliable, factual basis for the claims. Post-filing discovery is not an appropriate method for finding that basis.

## STATEMENT OF FACTS

The Animal Medical Center in New York City is a 501(c)(3) non-profit veterinary hospital that promotes the health and well-being of companion animals through advanced treatment, research and education. *See* Affirmation of Louis P. DiLorenzo, executed January 22, 2014 (herein "DiLorenzo Aff."), ¶ 3.

Plaintiff Deirdre Chiaramonte ("Plaintiff"), worked for AMC as a veterinarian beginning in 2002, initially working in the Internal Medicine department, and later focusing solely on the President's Council ("PC"), which provided concierge-style service to major donors. DiLorenzo Aff. ¶ 5. Plaintiff was later asked to develop, grow, and manage AMC's rehabilitation center. *Id.* At the time that AMC terminated Plaintiff's employment for legitimate business reasons in 2012, Plaintiff was the veterinarian responsible for the care of animals handled through the President's Council, as well as the Director of the Rehabilitation Center. *Id.*

The individual defendant, Kathryn Coyne, is the CEO of AMC. DiLorenzo Aff. ¶ 4.

The initial Complaint, styled *Dr. Deirdre Chiaramonte v. The Animal Medical Center and Kathryn Coyne*, Index No. 13-CIV-5117 (KPF) (the "Complaint"), was filed in this Court on July 23, 2013. DiLorenzo Aff. ¶6, Ex. 1. In her Complaint, Plaintiff alleged that: (1) Defendants discriminated against her by paying male employees higher wages than Plaintiff was paid for equal work, in violation of the EPA and the NYLL; (2) Defendant Coyne made false and defamatory statements about Plaintiff, resulting in tortious interference; and (3) Defendant Coyne defamed Plaintiff by slander *per se* by intentionally making false statements about Plaintiff's care of animals and by falsely accusing her of making racist statements. *Id.*

On September 5, 2013, Defendants submitted a letter requesting a pre-motion conference seeking permission to file a Rule 12(b)(6) motion to dismiss Plaintiff's complaint in its entirety on the grounds that Plaintiff failed to plead all four causes of action with sufficient particularity. DiLorenzo Aff. ¶ 7, Ex. 2. Defendants objected, *inter alia*, to Plaintiff's EPA and NYLL claims, because Plaintiff's complaint failed to name any comparators and, therefore, did not meet the pleading requirements of an EPA or NYLL claim. *Id.* In response, Plaintiff submitted a letter to the Court on September 12, 2013, objecting to Defendants' request to file a motion to dismiss. DiLorenzo Aff. ¶ 8, Ex. 3. With respect to the EPA claims, Plaintiff mentioned one "example" of a male employee who earned more than Plaintiff and one "example" of a male employee who earned more than another female employee based upon wage information taken from a public "document the AMC filed with the Internal Revenue Service, in 2011." *Id.*, p. 9. (Defendants have identified this public filing, AMC's 2011 Internal Revenue Service Form 990, Return of Organization Exempt From Income Tax, and it is attached as Exhibit 7 to the DiLorenzo Aff.) (hereinafter the "Tax Form").

The pre-motion conference was held on November 1, 2013 before Hon. Katherine Polk Failla. DiLorenzo Aff. ¶ 9. During the conference, Defendants agreed to withdraw their request to move to dismiss the state law tortious interference with contract and defamation claims, as the deficiencies in the complaint were sufficiently addressed by Plaintiff's September 12th letter. *Id.* However, Defendants advised the Court that they still wished to pursue a motion to dismiss the EPA and NYLL claims, because Plaintiff's letter had not identified male comparators who were "substantially equivalent" to Plaintiff. *Id.* Instead, Plaintiff's letter merely mentioned one male

employee who made more money than Plaintiff and another male employee who made more money than another female employee who had graduated from vet school at the same time as him. DiLorenzo Aff. ¶ 8, Ex. 3.

Taking Defendants' objections into consideration, the Court suggested that Plaintiff be permitted to amend her complaint to set forth a factual basis for the claims by identifying comparators. DiLorenzo Aff. ¶ 10. While Defendants continued to express disagreement that an amended complaint would remedy this issue because Plaintiff could not identify "substantially equivalent" male comparators, Defendants agreed to the Court's suggestion. *Id.* Accordingly, the Court ordered Plaintiff to file an amended complaint setting forth a factual basis for the EPA claims by identifying comparators, and allowed Defendants one week thereafter to decide whether they would pursue their motion to dismiss the EPA claims, or whether Plaintiff met her pleading burden. *Id.*

Plaintiff filed an amended complaint on November 15, 2013 (the "Amended Complaint"), setting forth essentially the same claims as the initial complaint. DiLorenzo Aff. ¶ 12, Ex. 4. After reviewing Plaintiff's Amended Complaint, Defendants contend that Plaintiff has still failed to meet her pleading burden with respect to the EPA and NYLL claims, because the Amended Complaint again fails to name comparators who performed equal work. Instead, just as she did in the September 12 letter, Plaintiff merely mentions one "example" of a male employee, Dr. Doug Palma ("Palma"), who earned more than Plaintiff, and one "example" of a male employee, Dr. Chick Weisse

("Weisse"), who earned more than another female employee, Dr. Janet Kovak McClaran ("McClaran")[1]. *See* DiLorenzo Aff. ¶ 12, Ex. 4, ¶¶ 31-32.

In the Amended Complaint, Plaintiff describes her role at AMC by stating that she ran a program known as the President's Council, a special service that was provided to the pets of Board members, Board members' friends, donors, and certain other pets whose owners paid an annual premium for the service." DiLorenzo Aff. ¶ 12, Ex. 4, ¶10. She alleges that she "was the primary veterinarian who provided medical care to the animals treated through the Council" and that "[a]ny new Council patients were assigned to [her] if they did not already have a primary veterinarian." *Id.* She further claims that "[i]f specialty care was needed, [she] remained a key part of the team providing medical care." *Id.* She further states that "[i]n or about April 2005, she helped to establish a Rehabilitation and Fitness Service at AMC with . . . a member of the Board of Trustees and was responsible for running it." *Id*, Ex. 4, ¶11. She does not, however, allege that she performed any medical procedures herself (and, indeed, she did not perform specialized medical procedures). *Id.*; Affidavit of Kathryn Coyne, sworn to on January 22, 2014 (herein, "Coyne Aff.") ¶ 7.

The only information Plaintiff sets forth about Palma in the Amended Complaint is his alleged salary, that he is board-certified in Internal Medicine, when Palma graduated from veterinary school and became board-certified, and how many days per week he worked. DiLorenzo Aff. ¶ 12, Ex. 4, ¶31. Plaintiff provides even less information about Weisse, noting only that he earned more than another female veterinarian, McClaran, who graduated from veterinary school the same year as he did. *Id.*, ¶32. Plaintiff does

---

[1] The Amended Complaint incorrectly spells McClaran's name as "Dr. Janet Kovac McClaran." The correct spelling of her name is "Dr. Janet Kovak McClaran."

not give any indication as to how Weisse and McClaran perform "substantially equal" jobs. *See id.* ¶¶31-32.

## ARGUMENT

### I. STANDARD OF REVIEW.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as amplified by *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), sets forth the standard applicable for motions to dismiss. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As the *Twombly* Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive ... must be crossed to enter the realm of plausible liability." *Id.* at 1965, 1966 n. 5. To survive a motion for summary judgment, a plaintiff "need not establish a prima facie case, but [the plaintiff's claims] must still be facially plausible and provide fair notice of the basis of the claims." *EEOC v. Port Auth. of N.Y. & N.J.*, No. 10 Civ. 7462, 2012 U.S. Dist. LEXIS 69307, at *9 (S.D.N.Y. May 16, 2012).

In evaluating a Rule 12(b)(6) motion, a court may properly consider the Complaint as well as "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or

documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (overruled, in part, on other grounds by *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 452 (E.D.N.Y. 2007)) (citations omitted). "Even when a document is not incorporated by reference, a court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)). Accordingly, in the instant case, the Court may properly consider the exhibits to the DiLorenzo Affirmation because they are integral to the Complaint, they are in Plaintiff's possession, and Plaintiff relied on these documents in bringing suit. Although Plaintiff's EPA and NYLL claims may be dismissed solely based on the Amended Complaint, Defendants' Memorandum of Law, the DiLorenzo Affirmation, and the exhibits attached thereto, to the extent that the Court wishes to also examine the Affidavit of Kathryn Coyne (hereinafter the "Coyne Aff."), it may prove a helpful reference with respect to the definition of various medical titles and roles.[2]

## II. PLAINTIFF'S EPA AND NYLL CLAIMS SHOULD BE DISMISSED BECAUSE SHE HAS FAILED TO ADEQUATELY PLEAD AN EPA OR NYLL CLAIM.

"The EPA prohibits an employer from discriminating on the basis of sex by paying employees of one sex less than that which it pays to employees of the other sex for equal work on jobs the performance of which requires equal skill, effort, and

[2] Defendants note that all of the information contained in the Coyne Aff. was available to Plaintiff. A reasonable person in Plaintiff's position, who worked at AMC for ten years and whose allegations were based upon her belief that male employees were paid more than female employees, should have been aware of the most basic information about her coworkers.

responsibility, and which are performed under similar working conditions." *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *9-10 (citations omitted). Claims for violations of the Equal Pay Act and Section 194 of the NYLL are to be evaluated under the same standard. *See Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) (citations omitted); *Abdullajeva v. Club Quarters, Inc.*, 1996 U.S. Dist. LEXIS 12805, at *5 (S.D.N.Y. Sept. 3, 1996).

"To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that her employer violated the Equal Pay Act." *Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d at 238. Plaintiffs alleging EPA violations have "the burden of showing that the employer paid different wages to employees of opposite sexes . . . for equal work on jobs whose performance requires equal skill, effort, and responsibility." *Noyer v. Viacom Inc.*, No. 97 Civ. 6989 (JSR), 1998 U.S. Dist. LEXIS 6341, at *8-9 (S.D.N.Y. Apr. 30, 1998) (citing *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991)). Thus, "[e]ven at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim" because a "plaintiff must allege at least some facts to support contentions that her employer violated the EPA." *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001).

> Bald allegations that male employees were paid more than female employees . . . will not survive a motion to dismiss, particularly in light of the standards set forth in . . . *Twombly* . . . Well before the Supreme Court's holding in *Twombly* . . . the Second Circuit and district courts expressly held that such conclusory allegations could not withstand a Rule 12(b)(6) motion to dismiss an EPA claim.

*Suzuki v. State Univ. of N.Y. College,* No. 08-CV-4569, 2013 U.S. Dist. LEXIS 83555, *9-10 (E.D.N.Y. Jun. 13, 2013); *see also Lacey v. Carroll McEntee & McGinley, Inc., No.*

93 Civ. 88321994 U.S. Dist. LEXIS 15298, 7-8 (S.D.N.Y. Oct. 19, 1994) (dismissing EPA claim where the plaintiff "alleged disparate wages, equal performance level and similar working conditions but did not supply any facts to support her allegations," noting that a "complaint that contains only conclusory statements as to the liability of a defendant will not withstand a motion to dismiss").

**A. Plaintiff's Complaint Should Be Dismissed Because She Is Attempting to Circumvent the Pleading Requirements of the EPA and the NYLL by Failing to Name Male Comparators, Thereby Denying Defendants of Fair Notice of her EPA and NYLL Claims.**

This Court has held that "[u]nder the plain language of the statute, and as interpreted by this Circuit, the **identification** of a **comparator** employed by the same employer and of the opposite gender is an indispensable requirement for a plaintiff bringing an Equal Pay Act Claim." *Morris v. Fordham Univ.*, No. 03 Civ. 0556, 2004 U.S. Dist. LEXIS 7310, at *13 (S.D.N.Y. Apr. 27, 2004) (emphasis in original). Contrary to Plaintiff's contention, naming a "comparator" does not simply translate into adducing an example of any male employee of the organization who earns more than Plaintiff; instead, a plaintiff must identify an employee of the opposite sex who earns more than the plaintiff ***and who performs equal work***. *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *10.

With respect to her EPA and NYLL claims, the Amended Complaint alleges only that, "[u]pon information and belief, male veterinarians employed by AMC whose credentials and skills are comparable to Chiaramonte's were paid higher compensation than was Chiaramonte for equal work." She then offers Palma as an "example" of an employee who earns more than she does. She further claims that Weisse earned more

than another female veterinarian, McClaran. Plaintiff does not, however, allege that either she and Palma – or Weisse and McClaran – were comparators at all, especially since the Amended Complaint includes no allegations that she and Palma or Weisse and McClaran performed equal work.[3]

Plaintiff's use of "example[s]" rather than true comparators is a bald attempt to circumvent the pleading requirements of the EPA and the NYLL, which require Plaintiff to set forth a factual basis for her claims. *See, e.g., Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) (dismissing plaintiff's EPA claim based on failure to elaborate facts supporting her allegations). These examples do nothing to change the original complaint and instead, only further underscore Defendants' objection, discussed *infra* at pp. 11-19, and emphasized in Plaintiff's own Amended Complaint – that these employees are, in fact, not Plaintiff's comparators.

While it is true that a plaintiff need not establish a *prima facie* case in the complaint, a plaintiff *is* required to "[plead] sufficient facts to give the defendant fair notice of what the . . . claims are and the grounds upon which it rests." *De La PeÑa v. Metro. Life Ins. Co.*, 12-CV-0766, 2013 U.S. Dist. LEXIS 97769 (E.D.N.Y. July 11, 2013). New York courts have determined that, where plaintiffs fail to outline sufficient information surrounding their EPA and NYLL claims, such as, for example, specific facts about the time periods or the positions at which employees of the opposite sex received lower wages, they are speculative and "consequently fail[] to provide 'fair notice' to Defendants of her claims under the Equal Pay Act." *Bernstein v. Mony Group*, 228 F. Supp. 2d 415, 420 (S.D.N.Y. 2002) (citing *Brusseau v. Iona Coll.*, 2002 U.S. Dist. LEXIS

[3] In fact, the Tax Form upon which Plaintiff apparently relied in order to name employees in her Amended Complaint lists only top executives and highest earners at AMC. Clearly, Plaintiff would have been likely to find at least one male employee who earned more than she did. DiLorenzo Aff. 15, Ex. 7, p. 9.

15413, No. 02 Civ. 1372, 2002 WL 1933733, at *1 (S.D.N.Y. Aug. 21, 2002) (confirming that the *Swierkiewicz* "fair notice" standard "applies to discrimination cases," including claims under the Equal Pay Act). As explained in greater detail *infra* at pp. 17-18, Plaintiff does not actually ever name the titles of any employees she names in her complaint, nor does she identify any relevant time periods. As it is drafted, Plaintiff's complaint does not provide "fair notice" to the Defendants of her claims, because it leaves open the question of whether Plaintiff will pick and choose additional comparators if the litigation ends up moving forward. Plaintiff's refusal to commit to comparators now should not result in "open season" on Defendant's pay records later. EPA and NYLL plaintiffs' naming of comparators in their complaints is not merely a suggestion – it is a pleading requirement that is necessary to continue forward with an unequal pay claim under both statutes.

**B. Plaintiff's Naming of Palma and Weisse in Her Complaint Does Not Cure the Defects in the Pleadings Because She Fails to Adequately Plead that She and the Alleged Comparators Performed "Equal Work".**

To set forth an EPA claim, not only must a plaintiff name comparators in the complaint, but a plaintiff is also required to adequately allege that the claimants and comparators perform "equal work." *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *10; *Gibson v. Jacob K. Javits Convention Ctr.*, No. 95 Civ. 9728, 1998 U.S. Dist. LEXIS 3717, 11-12 (S.D.N.Y. Mar. 23, 1998) ("Absent an allegation that individuals who were paid unequal wages were performing substantially equal work, the claim must fall [sic]. The Equal Pay Act prohibits unequal pay for equal work, not merely unequal pay"). As this Court noted in *EEOC v. Port Auth. of N.Y. & N.J.*:

> This determination requires an examination of the content of the jobs themselves, not of the employees. *See, e.g.*, EEOC, Compliance Manual § 10-IV(E)(2) (2000) ("The important comparison in determining whether the 'equal work' requirement is met is the comparison of the jobs, not the people performing the jobs."). Likewise, superficial comparisons based on job title or code are insufficient. *See id.* ("Job content, not job titles or classifications, determines the equality of jobs.")"

*Id.* (citing 29 C.F.R. § 1620.13(e) ("Application of the equal pay standard is not dependent on job classifications or titles but depends on actual job requirements and performance") (collecting cases)). The standard under the Equal Pay Act is the substantive content of the jobs, not their titles. *See Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 679 (S.D.N.Y. 1995) (comparing job content, rather than simply titles, of attorneys). "The jobs need not be identical, but they also may not simply be comparable." *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *11. Rather, the jobs must be substantially equal in skill, effort, and responsibility. *Id.*

Accordingly, courts in the Second Circuit have consistently dismissed EPA claims where plaintiffs, as Chiaramonte did, simply name "comparators" without also alleging how the comparators' roles were substantially similar to those of the plaintiffs. *See, e.g., Suzuki*, 2013 U.S. Dist. LEXIS 83555, *9-10; *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (affirming dismissal of Equal Pay Act complaint that failed to allege that plaintiff was paid less money than male counterpart for equal work); *Lacey v. Carroll McEntee & McGinley, Inc.*, No. 93 Civ. 8832, 1994 U.S. Dist. LEXIS 15298, 1994 WL 592158, at *3 (S.D.N.Y. Oct. 26, 1994) (granting motion to dismiss complaint in the absence of any factual information to support allegation of disparate wages, equal performance level and similar working conditions); *Bass*, 129 F. Supp. 2d at 503; *Gibson v. Jacob K. Javits Convention Ctr.*, 1998 U.S. Dist. LEXIS

3717, 8 (granting defendant's motion to dismiss, in part, since "the only specific facts pled in support of the Equal Pay Act claim concern the qualifications of the [comparator]" and "th[o]se facts cannot support an Equal Pay Act claim because they [did] not allege that [the comparators] performed substantially equal work").

For this reason, in *EEOC v. Port Auth. of N.Y. & N.J.*, where the EEOC alleged that Port Authority violated the EPA with respect to a class of fourteen non-supervisory female attorneys in Port Authority's law department, the Port Authority's motion to dismiss was granted. The EEOC's complaint was insufficiently pled where "[t]he only remotely substantive allegations [we]re that the relevant attorneys 'ha[d] substantially similar lengths of service and experience' and 'ha[d] the same job code." This Court reasoned, "These allegations do not speak at all to the effort or responsibility required of the jobs, and they mention the requisite skill only cursorily. Without more, they are insufficient to meet the plausibility and fair notice standard." *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *12-13. In *Port Authority*, the court had ordered the EEOC to respond to defendant's contention interrogatories (which the court construed as a functional amendment to the complaint), but still dismissed the complaint because the interrogatory responses did not specifically discuss the job duties of the male counterparts, and so found that the element of "equal work" was not adequately alleged.

Even though Plaintiff identifies two male employees who purportedly earned more money than two female employees, her EPA and NYLL claims must still be dismissed because she fails to adequately plead that she and Palma, or Weisse and McClaran, performed "equal work." Although Plaintiff mentions the experience and the

hours that the other employees named in her complaint allegedly worked, she does not include even the briefest description of their work responsibilities, and has certainly not pled that their jobs are "substantially equal in skill, effort, and responsibility" -- a necessary pleading requirement for an EPA claim. *EEOC v. Port Auth. of N.Y. & N.J.*, 2012 U.S. Dist. LEXIS 69307, at *11 (citing *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001)).

While the Amended Complaint sets forth detailed descriptions of Plaintiff's day-to-day duties, it mentions not one scintilla of information about the job descriptions of her supposed comparators. DiLorenzo Aff. ¶12, Ex. 4. The only information Plaintiff sets forth about Palma is his alleged salary, that he is board-certified in Internal Medicine, when Palma graduated from veterinary school and became board-certified, and how many days per week he worked. *Id.* Plaintiff provides even less information about Weisse, noting only that he earned more than another female veterinarian, McClaran, who graduated from veterinary school the same year as he did. *Id.*, ¶32. She does not give any indication as to how Weisse and McClaran perform "substantially equal" jobs. *See id.* ¶¶31-32. Like the plaintiff in *EEOC v. Port Auth. of N.Y. & N.J.*, Plaintiff here only provides the lengths of experience and job codes for each alleged comparator, which is entirely insufficient to state an EPA or NYLL claim. *See id.*

Moreover, Plaintiff also fails to adequately allege that her job was equal to Palma's job or that Weisse's job was equal to McClaran's. To the contrary, Plaintiff does exactly the *opposite* by explicitly pointing out the *differences* between her job and Palma's job: "Unlike Chiaramonte, Palma worked only four days per week and did not have additional responsibilities at the President's Council or the Rehabilitation and

Fitness Clinic." DiLorenzo Aff. ¶ 12, Ex. 4, ¶31. While Plaintiff states that Palma is a veterinarian, she does *not* ever explain why she, the head of the President's Council and the rehabilitation program, should be compared to him. While Plaintiff discusses the responsibilities Palma does *not* have, she never mentions what it is he actually does do (and conveniently ignores the fact that Palma actually has far greater responsibilities than Plaintiff did), thereby failing to adequately allege that they performed equal work. DiLorenzo Aff. ¶ 12, Ex. 4.[4] In fact, by Plaintiff's own admission, she has a completely different job than he does and does not provide the specialty care or medical procedures that other veterinarians do; indeed, as she states in her Amended Complaint, she becomes "part of the team" providing medical care when specialty care is needed, but she does not allege that she performed any medical procedures herself, as the rest of the team did. *Id.*; *Coyne Aff.* ¶ 7. DiLorenzo Aff. ¶ 12, Ex. 4, ¶10. Moreover, as is noted in the 2011 Tax Form[5], from which Plaintiff obtained the salary information included in the Amended Complaint, Palma is in the Internal Medicine

---

[4] In her Amended Complaint, Chiaramonte admits that her role was different from Palma's job. DiLorenzo Aff. ¶12, Ex. 4. While her allegations in the Amended Complaint may make her role sound lofty, in reality, Plaintiff had far less responsibilities than Palma. Coyne Aff, ¶ 7. Palma is responsible for every animal who entered the emergency room (the "ER") who is referred to him and his service, meaning that he saw an average of 10-15 patients per day, a figure which does not take into account the additional procedures he performed. *Id.* Plaintiff was not responsible for any medical care of animals presenting to the ER was only responsible for, at most, a total of 78 President's Council pets at any given time, meaning that she saw, on average, 1.5 patients per day. *Id.* Palma was also required to teach interns and residents on a full-time basis, while Plaintiff's job involved no teaching of interns/residents whatsoever. *Id.* Also unlike Palma, who regularly performed endoscopies, stent procedures, and ultrasounds, Plaintiff did not perform these specialized procedures herself. *Id.* In addition to all of his other duties, Palma was also the Medical Director of the Special Care Unit. *Id.*, ¶ 8.

[5] The Internal Revenue Service's 2011 Instructions for Form 990 Return of Organization Exempt from Income Tax require that AMC adjust annual compensation on the Tax Form to include/exclude certain benefits and voluntary deductions, which skews any compensation comparison. Coyne Aff. ¶ 5. For example, pet care charges are added to compensation, while voluntary contributions to flexible spending (FSA), dependent care, and commutation, etc. are deducted. *Id.* Furthermore, based solely on the Tax Form upon which Plaintiff relies, when adding Column D of the Tax Form ("Reportable compensation from the organization") and Column F of the Tax Form ("Estimated amount of other compensation from the organization and related organizations"), McClaran's total compensation is actually $7,145 more than Weisse's. *Id.*

Department, while she is head of the President's Council and the Rehabilitation Program. DiLorenzo Aff. ¶12, Ex. 4; ¶ 15, Ex. 7.

Furthermore, Plaintiff spends several paragraphs of the Amended Complaint describing her own job duties, none of which she claims were ever performed by anyone else:

- "In or about 2002, [several board members] asked Chiaramonte to run a program that in 2004 was formalized as the President's Council, a special service that was provided to the pets of Board members, Board members' friends, donors, and certain other pets whose owners paid an annual premium for the service." DiLorenzo Aff. ¶ 12, Ex. 4, ¶10.
- "[Plaintiff] was the primary veterinarian who provided medical care to the animals treated through the Council. Any new Council patients were assigned to Chiaramonte if they did not already have a primary veterinarian. If specialty care was needed, Chiaramonte remained a key part of the team providing medical care." *Id.*
- "In or about April 2005, Chiaramonte helped to establish a Rehabilitation and Fitness Service at AMC with . . . a member of the Board of Trustees. Once the Service was established, Chiaramonte was responsible for running it." *Id*, ¶11.

Without alleging that other male employees had jobs that were substantially similar to hers, the above statements may not form a basis for an EPA or NYLL claim.

Rather than making any attempt to show how her position was substantially similar to Palma's or how Weisse's position was similar to McClaran's, Plaintiff merely relies on job titles in naming employees in the Amended Complaint. It is well-settled

that job titles or facts concerning the qualifications of the comparators "cannot support an Equal Pay Act claim because they [do] not allege that the comparators performed substantially equal work". *Gibson v. Jacob K. Javits Convention Ctr.*, 1998 U.S. Dist. LEXIS 3717, at *8 (internal citations and quotations omitted).

Plaintiff certainly does not explain why Weisse and McClaran should be compared to one another, since the only alleged similarity between them noted on the face of the Amended Complaint is that they are both surgeons. DiLorenzo Aff. ¶ 12, Ex. 4, ¶32. However, based on the document to which Plaintiff refers in her September 12, 2013 letter to the Court, and upon which she has admittedly relied in filing her Amended Complaint, Plaintiff has misrepresented even their job titles. DiLorenzo Aff. ¶ 15, Ex. 7, p. 9 ("Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees"). While McClaran is a Staff Doctor in the Surgery Department, Weisse is a Staff Doctor in the Interventional Radiology Department, which is far more specialized. *Id.* Although job titles alone are not sufficient to show that two employees are comparators, here, Plaintiff cannot even demonstrate that these two employees are in the same department, much less that their job duties are substantially similar. *See id.* As is evident from the document Plaintiff references, McClaran is a general surgeon, meaning she basically performs soft tissue surgery. *Id.*; Coyne Aff. ¶ 9-10. Weisse performs these types of surgeries as well, but as the document indicates, he is an interventional radiologist.[6] *Id.*

[6] Weisse can perform general surgeries, but because he is an Interventional Radiologist, he also performs endoscopies, surgical stenting of tracheas and ureters, ERCP procedures (biliary endoscopy), liver shunts, lithotripsy for kidney stones and disease, chemo-embolization of cancerous tumors, interarterial chemotherapy, embolization for hemorrhages, laser ablation, and nasal pharyngeal stenting. Coyne Aff. ¶ 11. Additionally, he oversees one of the United States' few fellowship programs for Interventional Radiology and Endoscopy and is one of between five and ten veterinarians in the country who also performs techniques involving interventional radiology. Coyne Aff. ¶ 12. Moreover, Plaintiff's

In sum, Plaintiff has offered no specific, factual support for her contentions that AMC violated the EPA other than her own conclusory allegations, a recitation of the elements of the claim, and some examples of non-comparators who were allegedly paid more than Plaintiff and another female employee. Rather, her EPA and NYLL claims boil down to her notion that simply because two male employees, seemingly chosen at random according to which employees were listed on a "highest earner" Tax Form from 2011, earned more than two female employees, AMC is in violation of the EPA. Such speculatory allegations based on Plaintiff's "information and belief," which in no way demonstrate that male employees were paid more than female employees who performed equal work, are not sufficient to save an EPA or NYLL claim. *See Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) (dismissing plaintiff's EPA claim based on failure to elaborate facts supporting allegations, such as identification of male counterpart with higher salary or women who were also discriminated against)[7]; *see also Suzuki v. State Univ. of N.Y. College*, 2013

---

allegation that Weisse worked three weeks per month while McClaran worked four is patently untrue; Weisse's job responsibilities require him to conduct research outside the clinic twelve weeks per year. Coyne Aff. ¶ 13.

[7] In her November 26, 2013 letter to the Court, Plaintiff attempted to convince the Court that *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001) held that a deficiently pled complaint may be cured by simply offering a male counterpart with a higher salary or suggesting that other females are discriminated against. However, Plaintiff's contention is misleading and *Bass* does not stand for this proposition at all. Rather, the *Bass* court only mentions that the plaintiff did not offer a male counterpart or suggest that other females were discriminated against to demonstrate that the complaint was so deficient that it did not include even the most basic identification of her comparators. The language to which Plaintiff points in no way holds that a deficient complaint may be remedied by adding such minimal information:

> Plaintiff's Second Amended Complaint contains only two isolated and rudimentary assertions supporting her EPA claim. 'Upon information and belief, Plaintiff was paid lower wages than males performing comparable work." (Sec. Am. Compl. P 45.) "Defendant WWFE failed to pay equal wages to plaintiff for equal work, because of her sex, in violation of the Equal Pay Act." (Id. P 65.) She does not offer a male counterpart with a higher salary, nor does she suggest that other females are likewise discriminated against. In sum, she fails to elaborate facts supporting her

U.S. Dist. LEXIS 83555, at *9-10 (E.D.N.Y. Jun. 13 2013)("[b]ald allegations that male employees were paid more than female employees . . . will not survive a motion to dismiss"); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (allegation that plaintiff was not receiving equal pay too vague to withstand motion to dismiss).

"Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim" because a "plaintiff must allege at least some facts to support contentions that her employer violated the EPA." *Bass*, 129 F. Supp. 2d at 503. "To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that her employer violated the Equal Pay Act." *Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001). Because Plaintiff has failed to do so, her EPA and NYLL claims must be dismissed.

## III. EVEN IF THE COURT DOES NOT DISMISS PLAINTIFF'S EPA AND NYLL CLAIMS, IT SHOULD LIMIT DISCOVERY TO THE ALLEGED "COMPARATORS" NAMED IN PLAINTIFF'S AMENDED COMPLAINT.

If Plaintiff is permitted to proceed with her EPA and NYLL claims without being required to identify a tailored, factual basis for her claims (and, as argued above, the naming of a single male employee who happened to be paid more than Plaintiff but who was not in any way an appropriate comparator under the EPA or NYLL does not constitute a factual basis for her claims), it will open the door for Plaintiff to pursue widespread, open-ended discovery and to retroactively search for the factual basis she should have been able to adduce at the time she brought the EPA and NYLL claims.

---

"information and belief" or even giving rise to a reasonable inference to support her claim. Accordingly, she fails to state a claim under the Equal Pay Act, and her Third Cause of Action will be dismissed.

This type of broad discovery would place an unreasonable burden on Defendants, an institution providing vital non-profit services to the city of New York, and could involve the disclosure of highly sensitive and confidential company and employee information that could very well have no relevance to this matter. *See Moore v. Publicis Groupe SA*, No. 11 Civ. 1279, 2013 U.S. Dist. LEXIS 120024 at *7 (S.D.N.Y. 2013) (adopted by, objection overruled by, motion denied by *Moore v. Publicis Group SA*, No. 11 Civ. 1279, 2013 U.S. Dist LEXIS 120024 (S.D.N.Y. Dec. 3, 2012) (noting that discovery should be "very focused and reasonable and not [amount to] a general fishing expedition").

Here, Plaintiff has not met her minimal pleading burden of naming comparators who performed work equal to hers. Should the Court deny Defendants' motion to dismiss Plaintiff's EPA and NYLL claims, Plaintiff should not then be permitted to go on a "fishing expedition" in order to refine her complaint. "Indeed, allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to streamline litigation by dispensing with needless discovery and factfinding where the plaintiff has failed to state a claim under the law." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 (S.D.N.Y. 2009) (internal quotations and citations omitted). "Except in certain limited circumstances . . . discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).

Accordingly, should this litigation proceed, Plaintiff's discovery about confidential salary information should be limited to the employees named in the Amended Complaint. Plaintiff should not be permitted to plead now and ask later in order to avoid stating a legally cognizable claim which would provide fair notice to Defendants of the claims being brought against them.

## CONCLUSION

For all of the above reasons, Plaintiff's EPA and NYLL claims should be dismissed Plaintiff's remaining claims should be remanded to state court, as this Court will no longer retain jurisdiction over the matter.

Dated: New York, New York
January 22, 2014

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: Louis P. DiLorenzo
(LD-3988)
330 Madison Avenue, 39th Floor
New York, NY 10017
T: 646.253.2315
F: 646.235.2301
E: ldilorenzo@bsk.com